Next case is Bush v. United States and Shelton v. United States. Mr. Redding. Good morning. If it pleases the court, first I'd like to apologize. I have a cold and possibly beginning bronchitis, so I will try to project and speak clearly, but I am having some difficulty. Do you have any masks to hand out? I wish I did, Your Honor. They've been asking me the same question for two days. Also, just as a point to lighten the seriousness today, I'd like to point out that these partnerships that are involved here were the syndication partnerships for Lone Wolf and Quaid, which ultimately was used as the basis for the long-running TV series Walker, Texas Ranger. And Cinema 84 was the marketing partnership for Terminator, which, as we all know, was Arnold Schwarzenegger's movie that led to the multiple remakes, or the multiple sequels, plus a TV series. And Return of the Living Dead and Howling 2, which have become cult classic horror films. So it's kind of interesting to note that not only do these movies seem to have an ongoing life, so do the tax issues related to them. They all seem to speak of death, though. The living dead. Is that what you want to allude to? No, Your Honor. That was not my intent. Please proceed. Your Honor, if I may, personally, I think this should really be a simple case. The government acknowledges that the well-settled rule that an assessment made without issuing a required statutory notice, if one is required, is an illegal assessment, and it is void and wrongfully collected. Section 6213 generally requires that a notice of deficiency always be issued before a deficiency may be assessed. The government's reliance is on the exception to that in the TEFRA partnership proceedings under Section 6230A1 for a computational adjustment, which gets us to the definition that has been so heavily briefed and argued. The definition itself is simple. It says the term computational adjustment means the change in the tax liability of a partner which properly reflects the treatment under this subchapter, the subchapter 63C, of a partnership item. Does your view of that provision necessarily mean that treatment means the same thing as change? No, Your Honor, it does not. It does not. There is a change required, but if I may, I'd like to address that systematically. I think a very clear understanding and meaning to that is the following. If a partner's treatment of a partnership item is inconsistent with the treatment on the partnership return or as that item is adjusted in a proper proceeding, then the government may make as a computational adjustment the tax assessment that brings the taxpayer's treatment, the partner's treatment, into compliance with the proper treatment at the partnership level. Now, what that means is there has to be a change to the treatment by the partner in every case. Well, that's what it says. It uses the word change in the tax liability. Yes, but it's also a change. I'm talking about the treatment, the word treatment, which follows that. I understand, Your Honor. Is your view that also that treatment means change? I don't think the word treatment means change, but it does mean there has to be, implicitly, there has to be a change in the treatment by the partner. I think some confusion comes about as to what treatment we're referring to. Are we talking about the treatment by the partnership on the partnership return or the treatment by the partner? And it is the treatment by the partner that always there has to be a change to produce a computational adjustment. Now, that change may be necessary to bring it into compliance with the return as filed, or that change may be necessary to bring it into compliance with the as-adjusted, as-changed partnership item at the partnership level. There does not always have to be a change in treatment at the partnership level, but there does have to be a change in treatment by the partner. There seems to be a difference in treatment between the individual return and either the original partnership return or the TEFRA proceeding. Exactly, Your Honor. To reconcile the treatment at the tip. Exactly, Your Honor. And it is because of that that I say that there must be a change to the way the partner treated the item, either to make it comply with the original treatment by the partnership or the as-corrected treatment. How is the at-risk amount treated by the partnership return? It is not, Your Honor. It is not? It is not. At this point, what you did, essentially, was agree to a change in the risk amount. So that caused a change in the partner's tax return. Yes, Your Honor. So is that a computational change? No, Your Honor. It's not. And I say that with all deference. First, the agreement was that not that anything at the partnership level would change, but that out of the debt of the partnership, in order for a partner to be at risk, he has to assume part of that debt. That is a personal-level assumption agreement. What was agreed in these closing agreements is that the personal assumption by a partner of part of that debt would not go into his at-risk computation. That is a purely partner-level agreement. Excuse me. Why isn't that a computational adjustment? Because the statute specifically speaks to the change in the tax liability of a partner. Resulting from the difference in his treatment of the partnership item between the way the partner treats it and the partnership treats it. These partners treated consistently with the partnership return. Every affected item has two elements to it. It has a partnership item element and a non-partnership item element. A computational adjustment cannot be made to reflect a change in the non-partnership item element. Now, you can make a hypothetical calculation. That's true. But that doesn't mean that that is the definition of a computational adjustment. Computational adjustment has to start with making the partner's treatment consistent with the partnership treatment. And here they were consistent. So it is not a computational adjustment. In addition, we can go one step further down in this. The next subsection in 6230 provides that where the assessment is to an affected item requiring partner-level determinations. A notice of deficiency is always required. Now, let me use a hypothetical here to give you a comparison where that comes in. It applies by definition to this case, but it's not necessary to this case because we really don't start with a computational adjustment as defined. If instead the agreement had been that the partnership had overstated its debt, then you would have an adjustment at the partnership level, and there would be a correction at the partner level resulting from that. But because at-risk amounts always require a full analysis of the partner's individual facts, it is still an affected item requiring a partner-level determination and is mandated to have a statutory notice of deficiency issued there even if the adjustment starts at the partnership level. So as I understand what you're saying, you're saying we don't even need to parse the language of what constitutes a computational adjustment because under the statute there is a different vehicle for a requirement of a deficiency notice? Yes, Your Honor. I look at it in the reverse order, but looking at it from the other end of the barrel, that would be absolutely correct. I think the definition of computational adjustment avoids ever having to look at that second phase. But even if it were originating at the partnership level and could be defined as a computational adjustment, it would still require the issuance of a statutory notice because the net effect is to an affected item requiring a partner-level determination. I'll give you an example. But these are two separate subsections under the statute, correct? The one that discusses computational adjustments and the one that separately says that you have to have deficiency proceedings in certain cases, including ones involving affected items? Yes, Your Honor. I agree. You alluded earlier to the situation that would apply if there had been an adjudication of the claims against the partnership. Suppose that in this FPAA proceeding in the tax court had gone to judgment, the claims made by the commissioner were that the partnership had claimed losses that they didn't have, deductions that were unavailable. If that had been the basis of the judgment in the tax court, then presumably that determination would then be transferred to the individual partners. What would be the form in which that would be transferred? Would that be transferred as a 465 at-risk determination? No, Your Honor. What would be the form? No, Your Honor, it would not. That would be a pure computational adjustment where the amount of deduction available to the partner is reduced. Okay. Go ahead. And that is a pure computational adjustment and may be assessed without issuing substantial damages. But that would still be a determination, in effect, is the amount of money that was really at risk, since that would be the basis for the commissioner's determination that there were no bona fide allegations, right? No, Your Honor. Why not? Because his amount at risk would still be. Let's say the deduction allowable was only one-tenth of the amount of his original capital contribution. His amount at risk would still be the full amount of the capital contribution. All the amount at risk does is limit the amount of deductions that may be taken. Right. So if the deductions allowable are less than his amount at risk, it's not a change in his amount at risk. His amount at risk continues to be used in future years against other deductions, et cetera. It's completely independent computation, Your Honor. But doesn't it also include the amount of the debt of the partnership, which could also be assumed by the partner at the partner's level to increase the amount at risk? That's a complex question, Your Honor. I have to take that in parts. For a limited partner, as a general rule, the amount of partnership debt does not increase his amount at risk. That can only be achieved for a limited partner, as we have here, by individually assuming personal liability for a portion of that debt, which is why that assumption agreement is a purely individual partner matter. There may be some partners in these partnerships that never assumed any of the debt. But it does impact the amount of debt, which the partnership at the partnership level. No, sir, it does not. Because you assume it at the limited partnership level. So the assumption is that the aspects of the debt is assumed by each individual limited partner at that particular level. So it reduces the partnership treatment of that debt. I don't believe that's correct, Your Honor. The partnership still reflects the debt, even though there has been an assumption of a part of it by some partner. He simply agrees with the creditor that he will assume personal and primary liability for payment of that debt, even though he is otherwise protected from it by his status as a limited partner. It doesn't change the reporting of the debt by the partnership. It doesn't change it, but it does change the distribution and the amount of risk which each individual limited partner has. That it does, Your Honor, but that is not a partnership item. That's not something that's allocated at the partnership level. And a very gross example of that, gross not meaning bad, but big, is if you have a partner who didn't subscribe to the partnership originally and make a capital contribution, but perhaps came in and bought a partner's interest and paid him twice what he had purchased, his amount at risk would be his amount of the purchase of that partnership interest, which can in no way be determined at the partnership level. The at-risk amount is an independent calculation made by each partner at the partner level, pure and simple. As I said, there are some changes, like a change in the actual amount of debt, that could originate at the partnership level that would affect it. But then you're into that, as I said, second category where a stat notice is still, I think, routinely required because of the very nature of the item itself. Do you see a difference between the language partner level determination and partnership item? Partner level determination as opposed to partnership item? Well, partnership item requires a partnership level determination. Although that can be made at either the partnership level or by agreement with an individual partner at the partner level, as is done in these agreements. Except here the agreement was there are no changes to the partnership item. So can there be a partner level determination if there's no change in a partnership item? Absolutely. There can be as... Give me an example. Well, this whole case. This case starts out with the agreement that there are no changes at the partnership level. None. Every change enumerated in that closing agreement, both those in favor of the taxpayer and those against the taxpayer, are changes to matters that are purely partner level specific. They are not changes to partnership items. They are partner level determinations regarding his individual specific factors. And those include not only the agreement to limit his amount at risk and disregard the assumptions. It also, in that closing agreement, goes on and agrees that he shall be entitled in computing his liability to determination of offsets for certain refund claims in subsequent years that he has preserved the right to raise an innocent spouse defense, which although neither of these partners did, it would have been theoretically available to the estate of Mrs. Bush. It preserves the right to have the liability recalculated, taking into account any potential carrybacks or carryovers from other years. And inherently, because of the notice of deficiency is required, it also preserves the right to raise any other kind of issues that would reduce his net tax liability. For example, I've actually had cases where a partner had such low taxable income, with the partnership deductions included, that he had not claimed, for example, an IRA contribution, medical expense deductions, etc., that would reduce his tax liability. Now, he has no right to automatically bring those issues in if the assessment is made as a computational adjustment. His only recourse is a subsequent refund claim to raise those new issues. But if a statutory notice is required, he does have the right, in the tax court proceeding, to raise every one of those issues to reach his ultimate tax liability. And here, had a notice of deficiency been issued, any of those matters could have been raised. Any of those issues, the issues to reduce the liability, in the tax court proceeding, to reach the ultimate amount of tax liability. Well, not any issues. I mean, anything that was in the closing agreement he was bound by, right? For the partners who would be bound. Yes, but he could raise those issues that are specific. For example, one favorable issue created in the closing agreement is this right to setoffs. Now, we tend to think that's automatic, but it is not. The government is not required to allow a taxpayer against a liability, a setoff, for a later year overpayment. However, if it is done, it is extremely beneficial to the taxpayer because it reduces interest computation from that point forward. And even if the later refund claim is separately paid, for example, and the tax assessment is made, the tax is paid, you pay interest on that tax assessment and liability to the date of assessment and payment. You get no tax deduction for that. You've got a refund claim starting two years later or three years later that accrues interest for a decade. The government pays you that interest, and you have to pay income tax on it. If it is set off, as was agreed in this agreement, that the government must do if they timely file those claims, then you get the benefit of the interest set off and avoid the taxation on that one leg of the interest. That is a very, very favorable position that was negotiated into these closing agreements. Can I just be clear on your answer to Judge O'Malley's question? Is it your view that if you're assuming you're entitled to a notice of deficiency, that you get to re-litigate or re-argue any of the issues dealt with in the closing agreement? No, ma'am. Absolutely not. Absolutely not. They are binding, but you get to bring in the other issues, and you get to seek enforcement of those issues. How broad is any other issues? How do we define any other issues, things that were never raised before? Any issue that a taxpayer could normally raise in a deficiency proceeding that is not foreclosed or addressed in this closing agreement. That's how broad. And the implementation of the settlement agreement. There may be disputes as to how the settlement agreement would be implemented. That is correct. That could also be disputed in the deficiency proceeding, which we had some serious disputes about after these assessments were made. So the settlement agreement is non-binding to the extent that you have another opportunity to litigate other issues? No, ma'am. No, ma'am. I want to be absolutely clear. The settlement agreement is absolutely binding on the matters covered in the settlement agreement. But understand that these closing agreements do not agree to a specific tax liability. They agree to certain specific matters and how those matters will be addressed in reaching the taxpayer's tax liability. There are other matters that the closing agreement doesn't address at all, such as what his medical expenses might be or whether or not he claimed a pension plan contribution. Those kinds of things could similarly be brought in in a deficiency notice case. No, you can seek to have the closing agreement applied and enforced, not changed. You can't challenge it. I completely agree with that. It is binding. There's no question of that. And I think, I can't think of a case in this circuit offhand, but I know Treaty Pines in the Fifth Circuit clearly says the closing agreements are applied and interpreted in accordance with contract law. And they are applied then in the judicial proceedings. No, they're bound by the closing agreement, Your Honor. There's no question about that. And with regard to the extent of the agreement, as I said, this agreement never agrees to a specific tax liability. It never agrees that these are the only factors that will be taken into account in reaching that tax liability. Now, there's a difference in, for example, a marathon case out of the claims court where you have a Form 866 used that agrees to a specific amount of tax liability for the taxpayer. And the claims court has said, in that case, you don't have to issue a notice of deficiency. And that is logically correct. I mean, you have an agreement by the taxpayer as to what he owes. There is no agreement as to what these taxpayers owe. Only how certain matters will be dealt with in computing that amount. If you were limited to a recovery of overpayments in this case, is there an overpayment that was made? Yes, Your Honor, there is. By how much? The entire amount. Under the United States Supreme Court decision in Jones v. Liberty Glass, the Supreme Court went through an extensive analysis of the history of the evolution of certain of these statutes as they were numbered under the prior code, but they're the same statutes. And in that, they were looking at 7422 grants the court authority and jurisdiction over claims arising out of erroneous amounts of tax or illegal or improper assessments or collection of the tax. 6511, which sets the statute of limitations for filing the refund claim that is mandated by 7422A in order to pursue a refund, says that you must file a claim in accordance with the statutes and regulations. If we disagree with the broader principle, the broad principle that you're asserting, that there is no notice that it's somehow void completely, and you were more limited than that, like, as I said, limited to just overpayments in the sense that they were made because they could not have been collected by the government due to the statute of limitations, is there an overpayment in that sense? Yes, Your Honor, but it originates from two sources there. You have a specific statute, 6401, that defines, as included in the term overpayment, any amount paid after the statute of limitations expired. And as the government's brief makes abundantly clear, it is quite apparent, I think, in the record here, the vast majority of these collections, if the assessment was invalid, occurred after limitations expired because the assessment doesn't extend the limitations period. But I will go forward and say that I believe Jones v. Liberty Glass makes clear that the intent of the term overpayment in the refund statute includes all of the types of claims that can be brought under 7422A. That case very clearly says the term overpayment is to be given its broad meaning, including not only erroneous amounts of tax, but amounts erroneously or wrongfully assessed and collected. Suppose the statute of limitations hadn't run. Let's assume that hypothetically. Yes, Your Honor. And the voluntary payments were made before the statute of limitations ran. Why should you get that amount back? Your Honor, then I think we're off into a completely different area of the law discriminating between what is a cash bond and what is a voluntary payment. Your Honor, the government's position is that if the statute of limitations has not run, you don't get the money back, correct? Yes. They're asserting Lewis v. Reynolds, but I think they're wrong. So why are they wrong since there's no net tax liability, no overpayment? Why should you get the money back if the statute of limitations has not run? I go back to Jones v. Liberty Glass. The Supreme Court has said the term overpayment includes an amount erroneously or wrongfully collected. And if a stat notice was required and not issued, these amounts were wrongfully collected. Now, if amounts were paid in prior to that by the taxpayer with a clear designation that these are intended as advance payments to the tax, the government could keep that. There's a whole body of law that is evolving around what happens if the taxpayer posts a cash bond, makes an advance remittance as security for a potential liability in the future, whether or not the government can keep those. We would need to get off into a completely different area of briefing to address that. Mr. Redding, you notice you're into your rebuttal. Would you like to say something? Yes, Your Honor, if I might. Okay, thank you, Mr. Redding. Mr. Weiner. Thank you, Your Honor, and may it please the Court. Prior to 1982, there was a problem with how you would assess liability attributable to a partnership. If you disagreed with how the partnership treated a partnership item, what would happen is the IRS would have to go out and seek collection, or by notice of deficiency, against each of the individual partners. If there were hundreds of partners, you'd have hundreds of different pieces of litigation going on, and it was massively inefficient. What happened was TEFRA. TEFRA was designed for the purpose of efficiency, of having one forum in which you dealt with partnership items. The results of that determination at the partnership level would flow through to the individual partners. But this case doesn't involve a determination as to a partnership item in the TEFRA proceedings, correct? I disagree with you, Your Honor, respectively. If you're referring to the definition of a computational adjustment, which is the change in tax liability of a partner that properly reflects the treatment of a partnership, or properly reflects the treatment under TEFRA of a partnership item, determination under TEFRA includes that there shall be no changes. Well, but if there was no change, then how does that create new tax liability? I mean, isn't it obvious that the computational adjustment means reconciling the partner's individual treatment of partnership items with the treatment that appeared in the partnership return or in the TEFRA proceeding? Treatment under TEFRA, Your Honor, we submit as this, is that it's the treatment of partnership items at the partnership level in a unified… But here there was no need to reconcile the individual return with the treatment of the partnership item in the TEFRA proceeding, right? Correct, Your Honor. We don't submit that this was an issue in which the partners diverged from the treatment of the partnership in terms of their return. Well, how can it be a computational adjustment if there was no divergence between the individual return and either the partnership return or the TEFRA proceeding? The most direct answer is, again, the one that I just gave, is that the treatment of a partnership item under TEFRA is the treatment of partnership items at the partnership level. Here, to give some context to that answer, here you had, in 1991, partnership proceedings were initiated with respect to both partnerships at issue in this case. Taxpayers participated in those partnership proceedings up until 1994. I'm sorry, they participated as of starting in 1994. In 1999, they entered into settlement agreements, which did two things. One is that it determined that their partnership items, which were, to that point, per the FPA, those items were at issue. The settlement agreement determined that there would be no changes to the partnership items. It did one other thing. It allowed the IRS to determine their at-risk amounts by merely computational process. Does it say that in the closing agreement? It does in so many words, Your Honor. It says it in two ways. It says in Paragraph 2 of the closing agreement, it says that taxpayers shall not be able to take partnership losses or can only take partnership losses to the extent they're at risk under 465. And then Paragraphs 3 through 9 define exactly how the IRS goes about computing the at-risk amount. But it doesn't say in the closing agreement that the IRS can do this through a computational adjustment. Oh, no. Because you said it just said it in so many words, but it doesn't. I'm sorry, Your Honor. I didn't mean to suggest that it says that they're able to assess by virtue of a computational adjustment. What I meant to say, if I did not say it correctly, was that through a strictly computational exercise, which means by looking to the partnership return, the partner return, and the items that are settled in the settlement agreement. You're saying that's implied from the agreements, but there's nothing that says because of this agreement and as part of this agreement, we will allow the IRS to calculate these numbers in a particular way. It doesn't say one way or the other in the agreement, does it? No, that is in essence the issue that is before this court. And at the trial level, the court had determined that, yes, in fact, there was no non-computational aspect to determining their at-risk amounts. And so the trial court in this case had held that the computational adjustments could be assessed directly because it did not require any partner-level determinations. And that is what 6230A provides. What was the relationship between the original claim in the partnership proceedings in the tax court, the claim by the commissioner, and the ultimate resolution in the settlement agreements with respect to the at-risk amounts? Is there a correlation between the claims that the commissioner presented in the partnership agreement proceeding or are those just two independent determinations? What the FPAS had asserted, the IRS had determined that effectively two things. That one is that the partnerships had not acquired the benefits and burdens of the films that underlie the basis. So they weren't real? These weren't real transactions. And the indebtedness was not a real transaction. Real indebtedness, right. And so they also did not acquire genuine indebtedness. And they took massive deductions by virtue of depreciating the property, being the film rights, and they also took massive deductions by virtue of the indebtedness that they were paying interest on. Now, what the settlement agreements, how these relate to the settlement agreements, is that these taxpayers entered into a settlement agreement in which they effectively struck a bargain because the FPAS would have wiped out pretty much all, as far as it can tell from the record, all the partnership debt. And so therefore, to whatever extent they claim losses on their own individual returns, those losses would have been wiped out at the partnership level. But these particular taxpayers entered into settlement agreements in which they were allowed to take losses to the extent of the amount they contributed to the partnerships, which increased their at-risk amount, as well as to the extent that the partnerships made any income. So in other words, what you're saying is that these settlement agreements preserved a little bit of what otherwise would have been a complete wipeout. Exactly. So where I'm going with this is the relationship between the proceeding, the FPA, proceeding in the tax court, and the ultimate settlements was if the proceeding had gone forward to judgment in the tax court, that would have resulted in pretty clearly a determination as to which there would be no need for a notice. It wouldn't be a computation adjustment because it would just be a downstream flow from the partnership. As to the partnership items, Your Honor, as to the affected items, it depends. It's too hypothetical. It depends on the particular affected item. Here we're talking about at-risk amounts in which, without the settlement agreement, the government can see it. An at-risk amount is an affected item, and an affected item, by definition, has partnership components to it, and it has partner-level components to it. And very often, as has been cited by a taxpayer in the panel briefing, that those partner components often require partner-level determinations, issues that haven't been cited or originally appear on the partner's return. However, here, what the settlement agreements did, and what's crucial, is that it settled whatever the IRS needed to know in terms of how to compute the at-risk amounts for these individual partners. It said their capital contributions were $50,000 in the case of Mr. Bush and $150,000 in the case of Mr. Sheldon. It said that they would only be able to increase their at-risk amount to the extent that the partnerships made income, and that was clearly on the partnership returns. So is it your view that if they were right and they required a notice of deficiency, they could go into tax law, into tax court? What is your view of what they could then mitigate in the tax court? Having entered into the settlement agreements, it is our view that they were not entitled to notices of deficiency because there were no partner-level determinations that the IRS made in computing. But what do you understand Mr. Redding's position to be as to – he says he was entitled to a notice of deficiency so that he could then go into tax court. What is your understanding of what he would then be able to challenge in the tax court? I do not know of anything that he could have challenged as to the liability that was attributable to the partnership. As to liability that's not attributable to the partnership, that has nothing to do with the partnership. Like for example, he took a deduction. He took more than the standard deduction or whatever, and so therefore he wants to litigate the fact that he's entitled to take twice the standard deduction. That is something in which he can litigate in another manner, but to say that that is an issue that he should be entitled to a notice of deficiency for liability that is attributable to a partnership defies Section 60230 that says that where there is tax liability, that in effect says where there is tax liability attributable to a partnership, that liability either is directly assessed if it can be made by computational adjustment alone or is assessed by virtue of deficiency procedures if it requires a partner-level determination. Here there was no partner-level determinations required to determine their tax liability, and so they were not entitled to a notice. But the partner-level determination occurred in the closing agreement itself, did it not? I disagree, Your Honor, because once the item is settled, Olsen clearly states, and correctly we submit that there is no partner-level determination made for items that are either settled or originally appear on our term. Those things are effectively conceded. You can't then re-litigate those items, and so therefore once the partnership-level proceeding had ended for these individuals, for these partners, there were no partner-level determinations. For the settlement, the closing agreement related to the TIFRA proceedings, the vehicle for the closing agreement was used to get them out of the TIFRA proceedings, correct? Correct. What's your response to your opponent's citation to the tax court decision, the Manco decision, that said even if all they had left to be able to challenge was the accuracy of the calculations, that they retained that right in this kind of settlement? My response is that that defies the statute, 6230A. Manco was a non-TIFRA partnership, and so therefore there was no exception that existed for computational adjustments as to those partners in that partnership. The statute here makes all the difference because it says that once a partnership item has been determined at the partnership level, if there are no subsequent partner-level determinations to be made, then the IRS assesses those items directly. And I think that if I could add to that the underlying logic here, which is that Congress wanted to provide partners with one prepayment opportunity in which to litigate their partnership components of affected items and their partner-level components of affected items. And these particular partners had taken advantage of their prepayment opportunity to litigate at the partnership level until they entered into settlement agreements. Are you saying that because they elected to litigate a partner-level issue as opposed to the partnership issue in the TIFRA proceedings that they're not entitled to the notice? Is that the theory? Your Honor, I would submit that settlement is not litigating a partner level. Item in a partnership proceeding. But the problem is that partnership item is a requirement of treatment of a partnership item is a requirement of the statute, the clear language. And there isn't any need to reconcile the individual return with any partnership item determination, correct?  Again, I would submit that if you look carefully, and perhaps maybe it would be useful to, it's on page 78 of our response brief, the definition of computational adjustment. I'll read it if I may for just one second. The term computational adjustment means the change in tax liability of a partner which properly reflects the treatment under the subchapter being TIFRA of a partnership item. When the IRS issued FPAS contesting various partnership items in which these partners participated in, those partnership items were in play, as it were. Now, when these partners entered into settlement agreements in which they determined that there would be no change to any partnership items, that settled the partnership level proceeding. How did that affect their tax liability? It affected their tax liability by virtue of the fact that their tax liability, we all agree, flows from their at-risk amounts. And at-risk amounts, Your Honor, is an affected item. And an affected item has two components that you have to look to. Well, you seem to be arguing that the computational adjustment and affected item that doesn't require a determination at the partner level are the same test under the statute. Is that your position? No, Your Honor. What I'm arguing is that a definition of a computational adjustment does not require a change to a partnership item. Now, how that works in terms of 6238, which provides the exemption from the deficiency procedures. I haven't heard the government say at all that the at-risk measure is a partnership item. No, Your Honor, it's not our position that it's a partnership item. The at-risk amount here is an affected item, and so therefore includes a partnership-level component and a partner-level component. Why is that different from what I just said? If the at-risk measure, the basis of their assessment, is not a partnership item, then how can it be a computational error? Because— Accepting that whatever happened in the partnership litigation would not affect the at-risk. It does affect, Your Honor. It is our position that certainly what happened at the partnership items affect at-risk amount necessarily. Like, for instance, to use the example of an at-risk amount, you're at risk for the amount, not these particular partners, but in general. You're at risk for partnership debt that you're personally liable for. You're at risk for the amounts that you contribute to a partnership. You're at risk for the amounts of partnership income that is not distributed from the partnership. But the other principle was much simpler, just whether there was a limit to the maximum at-risk, which would be unrelated to the specific items. Yes, it is our position, Your Honor, that the settlement agreements made the computation of the at-risk amount much simpler, but it is important to note that in order to determine the at-risk amount, you needed to determine the partnership items, and the way the TEFRA works is that you determine them first. There wasn't any change to the partnership item that affected the at-risk amount, right? Correct, Your Honor, but again, going back to the statute, we submit that the definition of computational adjustment and how the scheme works in terms of TEFRA at large is that you do not need a change to a partnership item. If you look again at 6222C, which contemplates a computational adjustment where there is no change to a partnership item at the partnership level, but yet there is a change to the tax liability of the partner, there is an example in which you have a change to the tax liability of a partner, but you have no change to a partnership item. I'm sorry, what is that example again? I missed the beginning. 6222C is an example in which it states that there should be a computational adjustment in order to coordinate the partnership items treated by the partnership and the partnership items treated by the partner. Now there you can have an example in which the treatment of the partnership items by the partnership, the IRS agrees that that treatment is correct, but still there's tax liability that flows down to the partner because their return needs to conform to the treatment of the partnership item at the partnership level. Yeah, but the problem is there isn't any need to reconcile the amounts in the individual returns here with partnership items either in the return, for example, or in the TEFRA procedure, right? There's no reconciliation based on that. Isn't that true? Your Honor, that is true, but again, we're using 6222C. We're not suggesting, to be clear, that 6222C is the type of computational adjustment that occurred here. What we're using is an example that the definition of computational adjustment as used in 6222C can occur where there is no change to a partnership item at the partnership level, which is how partnership items need to be treated under TEFRA generally. That would be 6221. It says that partnership items shall be treated at the partnership level. Under 6230A6, does treatment mean change at the partnership level, or does it mean just a change in the way it's viewed at the partnership level? I'm sorry, Your Honor. The treatment language. Yeah. It says, which properly reflects the treatment under the subchapter of partnership items. Yes. What does treatment mean? Does it have to be a changed item at the partnership level? No, it does not have to be a change, Your Honor. We suggest that it has to be the partnership item needs to be determined at which point, so like, for instance, again, here where you have an FPA issue challenging certain partnership items at the partnership level. Litigation then leads to settlement at which those items are determined not to change. That is treatment under TEFRA of a partnership item. So treatment does not mean a change at the partnership level. It just means a treatment of the matter at the partnership level, which affects the change at the tax level at the partner's level. Correct, Your Honor. We submit that's exactly what 6221, which basically lays out the general scheme. That's exactly treatment under TEFRA means what 6221 says, which is treatment at the partnership level. If I could move briefly on. Your argument really does seem to me, and correct me if this is wrong, but to depend a lot on the notion that the settlement was, in effect, substituting for what otherwise would have been a more conventional TEFRA-type set of transactions. You would have had a resolution presumably in the commissioner's favor because you got a settlement of some sort in the tax court, which would have resulted in an adjustment of the partnership return, which would then have flowed down to the partners and resulted in some significant reduction in the amount that the partners can take. But instead, you have in place a mechanism that just encapsulates a resolution by the parties of about where they feel comfortable. And you're saying that really ought to have the same attributes as the set of transactions for which it took the place. Is that a fair characterization of the practicalities of your argument? I think it is a fair characterization. And just to add to that, this not only approximated what would happen in a more conventional TEFRA proceeding followed by the liability flowing through the individual partners, but this did happen in the context of a TEFRA proceeding. This was a settlement which resulted in these particular partners being dismissed from the partnership proceeding because they no longer had an interest in it. And that is what the- I mean, I suppose you could get to the same place had you had the foresight. You could have gotten to the same place by instead of agreeing that the partnership items would not be affected, simply say that the partnership items shall be affected to the extent that the amount of the claim deduction should be reduced by $10. Yeah, if you reduce the partnership losses by $10- And you still have a settlement. And you still have the exact same settlement. It would seem to be that this then would have made the intricacies of the definition of a computational adjustment go away. That seems to be my sense. As well, just to get to the overarching sort of how TEFRA is supposed to work in this context is that you get one prepayment form in which to litigate your liability attributable to a partnership. When you've exercised that and then entered into a settlement, at which point there is no more issue as to that liability to debate, then TEFRA is designed so that you don't get a redundant prepayment form at the partner level in which you effectively can't litigate anything. It undermines the statutory scheme to allow- It is ensured that each partner got notice of the TEFRA proceeding. Not only notice, but they participated in the TEFRA proceeding. Do you have any idea, if we were to reject the government's view in this case and conclude that a notice of deficiency is in order in the circumstances we've talked about here, do you have any idea what the numbers are prospectively, annually, how many of these would turn- Where it's otherwise currently the IRS would not issue a notice of deficiency, where a notice of deficiency would then be required? Just as a matter of clarification, Your Honor, does this include that the court does adopt our view that just because an invalid assessment would be made under circumstances that you just described, that they are not automatically entitled to a refund on that basis? Again, I'll say yes. I think that's a little different. Part of the question here goes back to what is going to happen to these 30 cases that are pending. But if we were to reject your view on the statutory construction, prospectively, the IRS would have to be issuing notices of deficiency in numerous instances where they currently do not. Am I right about that? Correct, so long as the statute of limitations hasn't already expired. And again, it is our position in our brief that the issuance of an invalid computational assessment would not toll the statute of limitations. So that period would have continued to run. Now, here, these particular partners made payments and then subsequently sued for a refund. We submit that, again, if our computational adjustment argument, if the court rules against us to that, the question then becomes whether they made payments within the statute of limitations period for assessments under 6401. It's unclear from the record as to whether these partners did, but assuming that they did not, that they made payments outside the statute of limitations period, then they would be entitled to a refund of their amounts. And here, I believe that would be, in the case of Bush, 20 to 30. I can't remember. I wouldn't want to venture. It's in our panel briefing. We have the exact hour values laid out for both Bush and Shelton in terms of their partnership losses that they took for the years that are at issue here. The first question, though, doesn't relate to the dollar values in this case. I think what she's trying to get to is how many of these circumstances come up on an annual basis where you have separate proceedings and then you have settlements followed by the absence of any deficiency notice relating to the settlements. There are a couple of recent instances where beyond the 30-some-odd cases, two of which, for example, test cases, are before the court. Obviously, you have the other 28 to 30 that are below in the Court of Federal Claims as well. Recently, one of the cases that we cited to in our brief, which kind of makes the inverse argument as made by taxpayers here, which is that there was a settlement and we issued notices of deficiency. The government had issued notices of deficiency, and they claimed, no, the government should have made direct assessments on the basis of 6230A, and that would be the Desmond and Daniel Levitz case. If you could solve this problem for the future, could you not, by putting in the settlement agreement a waiver of the deficiency notice? Yes, Your Honor, that is true. Therefore, going forward, certainly there are lessons that can be learned and implemented, but obviously that doesn't create— and again, that's not to say that we haven't done things properly in this case, and we think that we have. Just to touch on the 6213A issue. The 6213A, which taxpayers cite as being the basis for their argument that they're entitled to refunds on the basis of an invalid assessment, we submit that that's not provided for in the statute. The statute does provide for a refund, but a refund in the context of an injunction of action that is clearly stated in the language of the statute, which says that a refund may be ordered by such court as ordering an injunction against a collection action. What our basic point as to the significance of an invalid assessment is an assessment is a prerequisite to collection. It is not a prerequisite to tax liability. So there's no—so they don't get the money back unless the statute of limitations is run, which is your position. That is entirely my position, Your Honor. And so neither 6213A, 7422 provides for that. One of the basic, clearest, most enduring reasons for that is the Lewis v. Reynolds, which provides that an overpayment must be shown for a refund to be authorized. Here, these taxpayers and all taxpayers in these situations must bring a claim for refund, and that refund requires showing an overpayment, and there has been no overpayment here. I see that my time has drawn almost to a close, and so unless there are any other questions. Thank you, Mr. Weiner. Mr. Reddy, you have about five and a half minutes. Thank you, Your Honor. I will try to hit a couple of things very, very quickly. First, the government here wants you to use Lewis v. Reynolds as an exculpatory provision to allow the government to avoid the consequences of an illegal assessment. I think, again, if you go back to Jones v. Glass, the Supreme Court decision said the term overpayment does, in fact, include any assessment that was wrongfully made in the collection of that assessment. I think that case is clear. So an overpayment does include not just an erroneously computed tax liability but a wrongly collected tax liability. That's a separate type of an overpayment. They're trying to mix the two here. Your Honor, even if the at-risk amount could have been computed with definitiveness based on this agreement, that at-risk amount is only one element of the taxpayer's liability, and that is a nonpartnership item element. It shouldn't be treated any different than any other nonpartnership item element, which is why all of these other factors come into play in computing the liability, and where if a stat notice had been issued, the taxpayer could have sought enforcement of those. Also, in the FPAW that was issued, there was, and it says, for information only. It was clear the IRS understood that the at-risk amount was not a partnership item. For information only. And it goes on and says the IRS has determined that they will determine that you weren't at risk. That was not an issue in the Tefra litigation. The Tefra litigation cannot address nonpartnership items, and that was a misstatement by government counsel. It said that in the Tefra partnership litigation, you can address the partnership items and the partner elements of affected items. You cannot. That is not permitted in a Tefra proceeding. You can address only the partnership items and the allocation of those items among the partners. Now, for years after 1997, there are some exceptions to that. We're talking about 1984, 5, and 6. When it comes to penalties, you can now address, and there's some doubt as to exactly what you can and can't, but there is some blurring of that rule. Can I ask you to address Judge Bison's question to the government? As I understand the question, it is that in the course of this proceeding, what started out as a partnership item was converted in the settlement to a partner-level item, and that, therefore, potentially, that there's a tax liability here as a result of a treatment of a partnership item, i.e., the treatment being converting the partnership item into a nonpartnership item. No, Your Honor.  It is true that by the settlement, they converted partnership items to nonpartnership items, but the agreement specifically was that the government conceded every proposed adjustment in the FPAW. There are no changes to partnership items. It did convert partnership items to nonpartnership items? Yes, sir. By statute... How did it do that? By statute, the partnership items of a partner would cease to be treated as partnership items upon settlement. It doesn't matter whether that settlement is complete agreement to as reported or if there are changes to it. It does have the effect of changing them. But you are still bound by the agreement, which means once they agreed to that, everything on that partnership return had to be accepted as reported. Just as the taxpayers couldn't go in and further challenge them, neither could the government. As to the impact of this on future litigation, Your Honor, it is extremely rare that this kind of situation occurs. The settlement agreements usually used in TEFRA cases involve Forms 870-P, 870-ID, that have separate agreements as to partnership items, nonpartnership items. The government's own manuals for their people tell them that if there is a settlement of a nonpartnership item element of an affected item, they need to issue a statutory notice or get a waiver. And in this case, the government simply didn't do it. In fact, we refused. How do you respond to the government's argument that there really is nothing left to complain about? So even if you'd had a deficiency notice, there was nothing you could assert because their calculations were defined by the settlement agreement. Your Honor, that's where the government wants you to think of the at-risk amount being the taxpayer's liability. It's not. There were a lot of things still at issue as to how much the taxpayer owed. And that's what a notice of deficiency goes to. It advises the taxpayer that the government has computed this ultimate tax liability for you. And you are entitled in a deficiency proceeding to raise any defenses to that you might have, which would include the agreements to the rights of these offsets, potential additional deductions, any erroneous calculation. Even if we conceded that their amount at risk was completely calculated correctly, we would have numerous other factors that could be raised in a deficiency proceeding. The deficiency proceeding addresses not one small adjustment as partnership items do, but addresses your entire tax liability. And it doesn't matter. I mean, they could have agreed that the amount at risk is x. That's still by virtue of non-assumption of the agreements. That still is nowhere near an agreement to what the tax liability of the partner might be. He might not even have a tax liability as a result of that. Do you have a final thought for us, Mr. Redding? Yes. A comparison was made to partial disallowance of the deductions. Couldn't have had the same effect. No, it wouldn't. By adjusting only the amount at risk, those deductions were preserved. They couldn't be taken in the first year. But those deductions are simply suspended and are allowed to be used against later year income. So it has a completely different impact. Thank you, Governor. Thank you. That concludes our hearings. All rise.